IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM A. WHITE,         *

    Petitioner,         *

       v.         *        Civil Action No. DKC-22-2371

WARDEN, FEDERAL CORRECTIONAL  *
INSTITUTION – CUMBERLAND,[1]
                   *

    Respondent.

*** 

**MEMORANDUM OPINION**

William A. White, a federal prisoner incarcerated at Federal Correctional Institution – Cumberland ("FCI-Cumberland"), filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241 seeking restoration of "about 10 days" of Earned Time Credits ("ETCs") under the First Step Act. ECF No. 1 at 1. Since the filing of the petition, some of those days have been granted, due to the ongoing revision and refinement of Bureau of Prisons ("BOP") policy and procedures. A few days remain in contention, however, so the entire action is not moot.

Pursuant to the court's Order directing Respondent to file a response to the petition (ECF No. 2), Respondent filed a motion to dismiss, or in the alternative, for summary judgment. ECF No. 3. Mr. White was advised of his right to respond (ECF No. 4), and did so on November 10, 2022. ECF No. 5. Respondent sought an extension of time within which to file a reply to Mr. White's response (ECF No. 6), which was granted by this court. ECF No. 7. Respondent's reply was filed December 28, 2022. ECF No. 8. Thereafter, Mr. White filed a motion for leave to supplement response to motion to dismiss. ECF No. 9. His motion shall be granted, and the court

---

[1] The proper respondent in an action for habeas corpus is Mr. White's custodian. *See* 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36 (2004). The Warden of Federal Correctional Institution – Cumberland, the facility where Mr.White is incarcerated, is the proper respondent in this case. The Clerk shall amend the docket accordingly.

will construe this filing as a surreply.   On March 3, 2023, Respondent filed correspondence with the court, offered as an update in conjunction with the Respondent's reply, regarding the recent recalculation of Mr. White's sentence.  ECF No. 10.  Mr. White has moved to strike this letter as an impermissible surreply.  ECF No. 11. This motion will be denied.

Having reviewed the papers, and finding no hearing necessary, *see* Md. Loc. R. 105.6 (D. Md. 2021), the court grants respondent's motion to dismiss, or in the alternative for summary judgement, and denies the petition for writ of habeas corpus.

## I.     Background

### A.     Factual Background

The parties agree on the factual background underlying this case.  Specifically, on July 21, 2022, Mr. White was transferred from Federal Correctional Institution ("FCI")–Terre Haute to Federal Transfer Center ("FTC")–Oklahoma City.  Compl., ECF No.1 at 2; Resp., ECF No. 3-1 at 2.  He remained at FTC—Oklahoma City until July 25, 2022.  *Id.*  While there, he was placed in the Special Housing Unit ("SHU") "for allegedly being a 'domestic terrorist.'"  ECF No. 1 at 1, 2; *see also* ECF No. 3-1 at 2 (noting that while Mr. White was in Oklahoma City he was "held in the SHU because he had several security threat group assignments.").  On July 25, 2022, Mr. White was transferred to FCI-Cumberland, where he remains to this day.  ECF No. 1 at 2; ECF No. 3-1 at 2.  Upon arrival at FCI-Cumberland, he was again "placed in the SHU from July 25, 2022 to August 22, 2022 due to unavailable bed space in general population."  ECF No. 3-1 at 2; *see also* ECF No. 1 at 2.  On August 22, 2022, he was released from the SHU to the general population at FCI-Cumberland.  *Id.*

### B.     The Positions of the Parties

Based on these facts, Mr. White explains that, pursuant to 28 CFR § 523.40, federal inmates are guaranteed to earn ETCs throughout their incarceration, except in several circumstances,

including while an inmate is housed in the SHU.  ECF No. 1 at 2-3.  Accordingly, while housed

in SHU while in transfer status  at FTC-Oklahoma City, and again once transferred to the SHU at

FCI-Cumberland, Mr. White was prevented from earning ETCs.  *Id.* at 3. He explains that his issue

is "not about SHU confinement per se," but rather that "the BOP was not permitted to impose loss

of ETCs as a collateral consequence of SHU confinement without due process."  *Id.* at 6.  Mr.

White states that he was "arbitrarily placed" in SHU due to an "idiosyncratic 'domestic terrorist'

designation" and the BOP's "inability to manage its bedspace," which cost him the ability to earn

ETCs without any due process.  *Id.* at 6.  As relief, he seeks a declaration that he was "deprived .

. . of ETCs without Due Process" and restoration of "all said ETCs (about 10 days)."  *Id.* at 7.

In response, Respondent argues that Mr. White is not entitled to relief because he has failed

to  exhaust  his  administrative  remedies  or  alternatively,  that  Mr.  White's  current  security

designation within the institution allows him only to *earn* credits, but they cannot be *applied* until

he obtains a lower security designation.  ECF No. 3-1 at 9.  Additionally, Respondent argues that

under  28  C.F.R.  §  523.41(c),  Mr.  White  was  statutorily  ineligible  to  earn  ETCs  based  on  his

housing in SHU.  *Id.* at 12.

Mr. White responded to the Respondent's motion.[2]  ECF No. 5.  In addition to discussing

exhaustion, Mr. White states that Respondent "didn't properly request summary judgment."  *Id.* at

4.   He  does  not  elaborate  on  what  was  improper  about  Respondent's  pursuit  of  summary

judgment.[3]  *Id.*  Next, he explains that Respondent misconstrues his Petition, as he "agree[s] that

---

[2]    In his Response, Mr. White asserts that he was not provided notice of his right to respond
pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  ECF No. 5 at 1.  However, the
docket reflects that Mr. White was provided such notice (*see* ECF No. 4).  And, in any event, his
Response was timely filed.

[3]    The court will not consider this argument further.  Respondent styled its motion as a
"Motion to Dismiss, or in the Alternative, for Summary Judgment," and provided the applicable
standards of review for each type of Motion.  When the court treats a motion to dismiss as a motion
for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the

the earning and application of ETCs are separate concepts." *Id.* at 5. He states that he does not seek to have his credits *applied*, but rather, challenges his inability to *earn* credits during his time in SHU. *Id.* He states that by misconstruing his claim, and thus not responding to it directly, Respondent "forfeits" this argument. *Id.* at 6.

Respondent replied on December 28, 2022, arguing again that Mr. White has not exhausted available administrative remedies, that he was provided notice pursuant to *Roseboro v. Garrison*, that the court should afford deference to the BOP "in the application of First Step Act (FSA) Time Credits and related statutes pursuant to *Chevron, U.S.A., Inc. v. NRDC*, Inc., 467 U.S. 837, 865 (1984)," and finally, that the "BOP is in full compliance with FSA's statutory mandate regarding the earning of Time Credits." ECF No. 8. Additionally, Respondent discusses at length recent revisions to the First Step Act (*see* ECF No. 8 at 8-11), and indicated that all federal inmates' credits would soon be recalculated. *Id.* at 12. At the time, Respondent indicated that "if Petitioner is entitled (which is determined based on whether he was in earning status while in the SHU) to additional Time Credits, any available Time Credits may be applied accordingly, if able and in accordance with BOP Program Statement 5410.01." *Id.*

Petitioner filed a Motion seeking leave to reply, which the court now grants.[4] ECF No. 9. Therein, he argues that Respondent's information regarding the updated BOP policies cannot be

---

material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the court, and the court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).

[4]     Generally, no party is entitled to file a surreply unless authorized by the court. *See* Local Rule 105.2(a) (D. Md. 2021). A surreply is most often permitted when the moving party must respond to matters raised for the first time in a reply. *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D. D.C. 2001). Moreover, the latest filings by both parties are not truly replies or surreplies, but rather updates of events that are highly relevant, and thus should be labelled supplements or amendments, rather that replies. The distinction is not material. All information will be considered.

accepted because it is raised for the first time in a Reply, and thus prohibited under *United States v. Alston*, 722 F.3d 603 (4th Cir. 2013).[5]  *Id.* at 3.  He indicates that, under the new BOP program statement, "SHU inmates would be permitted to earn ETCs while in SHU unless deprived of them by a disciplinary hearing officer."  *Id.*  He includes a FSA Time Credit recalculation sheet with his surreply, which indicates that most of the credits he seeks through this Petition were awarded to him through the recalculation done pursuant to the updated program statement.  *See* ECF No. 9-1.  However, even with the new calculations in place, he is still being denied ETCs for his time spent in transfer status in Oklahoma City, from July 21 until July 25, 2002.  *Id.*; ECF No. 9 at 4.  He states that "though this action now involves only one day of ETC, the point – that a prisoner cannot be deprived of ETCs without due process – is of increased importance."  ECF No. 9 at 4.

On March 3, 2023, Respondent filed correspondence with the court, and requested that it be construed as "an update in conjunction with the Respondent's Reply."  ECF No. 10 at 2.  In this correspondence, Respondent confirms what Petitioner stated in his surreply.   Namely, that "[o]n January 19, 2023, Petitioner received a recalculation of his FSA Time Credits pursuant to BOP Program Statement 5410.01 wherein . . . The BOP has restored the days he lost while he was held in the Special Housing Unit ("SHU").  Accordingly, Petitioner's FSA worksheet reflects only three disallowed program days for the time he was in transfer status from Terre Haute, Indiana to Oklahoma City, Oklahoma."  *Id.* at 1.  Based on the program statement, Respondent indicates that Mr. White is not entitled to credit for the days that he was in transfer status.  *Id.*  Specifically, "Petitioner cannot earn Time Credits while in a designation outside the institution."  *Id.* (citing

---

[5]    Mr. White misunderstands the procedural posture of *Alston.*  There, Alston's case was before the Fourth Circuit on appeal.  *United States v. Alston*, 722 F.3d 603, 606 (4th Cir. 2013).  The court noted that "an issue first argued in a reply brief is not properly before a court of appeals." *Id.* (quoting *Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n. 2 (4th Cir.1996)).

BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)).

Mr. White has moved to strike Respondent's correspondence as an impermissible surreply. ECF No. 11.  His motion will be denied, as the court views this filing as a relevant update to Respondent's Reply rather than as an impermissible surreply.  Further, it does not add any new information beyond what Mr. White himself preferred in his surreply, so he is not prejudiced by the inclusion of these facts in the record before the court.

## II.    Exhaustion

Habeas corpus relief is available when a prisoner is held "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Challenges to the execution of a federal sentence are properly brought under 28 U.S.C. § 2241.  *See Setser v. United States*, 566 U.S. 231, 244 (2012).  It is the responsibility of the United States Attorney General, the Department of Justice and the Federal Bureau of Prisons to compute sentences of prisoners committed to the custody of the United States or the District of Columbia and apply credit where it is due.  *See* 18 U.S.C. § 3624, *see also Leavis v. White*, 898 F.2d 154 (6th Cir. 1990) (citing *United States v. Norman*, 767 F.2d 455, 457 (8th Cir.1985)); *United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir. 1979).  In the event a prisoner disputes the computation of his sentence or the application of credits, he is permitted to seek a remedy for the grievance through the administrative remedy process in place in the Bureau of Prisons ("BOP") facilities.  *See* 28 C.F.R. 542.10 *et seq.*; *see also United States v. Mitchell*, 845 F.2d 951, 952 (11th Cir. 1988) ("[A] federal district court does not have jurisdiction to entertain a federal prisoner's petition for jail time credit until the prisoner has exhausted his administrative remedies with the Attorney General under 18 U.S.C. § 3568.").

It is well-established that a petitioner seeking judicial review of agency actions must first have exhausted available remedies within the agency prior to filing suit. *See McKart v. United States*, 395 U.S. 185, 193-95 (1969). "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence," that is, "to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). Petitioners seeking relief under § 2241 are subject to this exhaustion requirement. *See Branden v. 30 Judicial Cir. Ct*., 410 U.S. 484, 489-92 (1973); *McClung v. Shearin*, 90 Fed. Appx. 444, 445 (4th Cir. 2004) (Petitioner must exhaust administrative remedies prior to filing § 2241 petition seeking restoration of good conduct credits); *Asare v. United States Parole Commission*, 2 F.3d 540, 544 (4th Cir. 1993) (challenging BOP projected release date requires exhaustion). "Although § 2241 does not contain a statutory exhaustion requirement, courts have consistently required a petitioner to exhaust his administrative remedies prior to petitioning for a writ of habeas corpus." *Wright v. Warden, FCI-Cumberland*, No. CIV.A. RDB-10-671, 2010 WL 1258181, at *1 (D. Md. Mar. 24, 2010). "Exhaustion of administrative remedies may not be required where a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Id.* (citing *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3rd Cir.1988).

Mr. White and Respondent vehemently disagree on whether this claim is properly exhausted. And because the court's ability to address the merits of this case turns on whether Mr. White has properly exhausted his claim, it is worth carefully examining the arguments on both sides.

In his petition, Mr. White preemptively addresses his attempts to exhaust this claim.  ECF No. 1 at 3.  Mr. White states that on July 26, 2022, he "submitted a BP-8" form[6] to Counselor Rice raising the issue of being placed in SHU without due process.  *Id.*  Counselor Washington confirmed to Mr. White that the BP-8 form was received.  *Id.*  Mr. White states that he subsequently made numerous oral and written requests to Counselor Washington for a BP-9 form, but was not provided one.  *Id.*  He concludes that because he was not "able to timely obtain a BP-9, [he] was not able to access the administrative remedy system."  *Id.*

Respondent counters that Mr. White's claims are unexhausted.  ECF No. 3-1 at 9.  Contrary to Mr. White's assertion that he was not able to access the administrative remedy system, Respondent states that "[b]etween January 1, 2022 through October 12, 2022," which encompasses the complained-of time period at issue here, Mr White "filed fifty-seven administrative remedies, which clearly demonstrates his familiarity with the process."  *Id.*  Of those 57 administrative remedies, only four related to credits under the First Step Act.  *Id.*  Further, "[w]hen the institution closed or rejected his requests, [Mr. White] failed to correct the errors and/or appeal to Central Office," thereby failing to complete the process of exhausting his claims.

Respondent includes the Declaration of Misty Shaw, Paralegal at the Mid-Atlantic Regional Office of the  BOP, in support of the argument that Mr. White has failed to exhaust his claims.  ECF No. 3-3.  Ms. Shaw avers that Mr. White "has filed an innumerable total of remedies since being in BOP custody," and has filed 57 remedies between January 1, 2022 and October 12, 2022.  *Id.* at 4.  Of those 57, only four referenced the First Step Act.  *Id.*  Those four remedies referencing the First Step Act were filed on March 22, 2022, May 24, 2022, and two were filed on June 10, 2022.  *Id.*; *see also* ECF No. 3-3 at 15-45, Attachment B to the Decl. of Misty Shaw, Petitioner's BOP grievance history from 1/1/22 until 10/12/22.  The court notes that the dates of

---

[6]   Mr. White does not clarify what the different forms are used for.

Mr. White's grievances related to the FSA predate the relevant time period at issue in Mr. White's petition: from July 21, 2022 until August 22, 2022.  Ms. Shaw concludes that "[b]ecause [Mr. White] neither resubmitted his appeals when they were rejected in accordance with instruction and did not appeal to Central Office, he has not properly exhausted his administrative remedies."  ECF No. 3-3 at 5.

In reply, Mr. White again states that he filed a "BP-8" on July 26, 2022 regarding denial of ETCs while housed in SHU.  ECF No. 5 at 2.  He states that he then requested a "BP-9" form on several occasions, but Counselor Washington "failed to provide [him] with a BP-9 form because the BP-8 was never returned."  *Id.*  He states that he was required to file the remedy within 20 days time on the appropriate form, a BP-9, and with that form "unavailable" he could not exhaust his administrative remedies.  *Id.*  He indicates that he was able to file regional-level claims (on BP-10 and BP-11 forms) during the relevant time period.  *Id.*

Mr. White includes a sworn declaration averring that "para. 5-10 of Doc. 1", the portion of his petition which contains information regarding exhaustion, "are true."  ECF No. 5-1.  He further states that while he was able to obtain BP-10 and BP-11 forms from Counselor Washington during the time period at issue, Counselor Washington specifically denied him the BP-9 forms he needed properly to advance his claim through the administrative remedy process.  *Id.*  Respondent replied, again reiterating that Mr. White failed properly and fully to exhaust his administrative remedies. ECF No. 8.

The Administrative Remedy Procedure ("ARP") provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based.  *See* 28 C.F.R. § 542.14(a).  If an inmate is not satisfied with the Warden's response, he may appeal to the Regional Director within 20 calendar days of the Warden's response.  *See* 28 C.F.R. § 542.15(a).  If the

inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, Washington, D.C., using the appropriate forms. The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a).

The record before the court reflects a dispute of material fact between the parties regarding whether Mr. White was able to access the grievance procedures needed to exhaust this claim. Mr. White avers that he filed a "BP-8" form regarding his claims on July 26, 2022. Thereafter, he states that he repeatedly requested a "BP-9" form from Counselor Washington, but Counselor Washington would not provide him with the required BP-9 form. If, in fact, Counselor Washington was denying Mr. White these forms, Mr. White may have been unable to access the grievance procedure. Thus, there is a material dispute of fact as to whether Mr. White was prevented from accessing the forms required to complete the grievance process. The record, at this point, does not support an affirmative finding that Mr. White failed to exhaust this claim. Accordingly, the court must reach the merits of Mr. White's claim.

## III. Motion to Dismiss or for Summary Judgment

### A. Standards of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## B. Entitlement to Credits

Only the Attorney General, acting through the BOP, may administer a federal inmate's sentence. *See* 18 U.S.C. § 3621; *United States v. Wilson*, 503 U.S. 329, 335 (1992). This includes determining where an inmate serves his sentence as well as time credit. *See* 18 U.S.C. § 3621(b); *Wilson*, 503 U.S. at 335. "A claim for credit against a sentence attacks the computation and execution of the sentence rather than the sentence itself." *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989). Such challenges must be brought in a petition for habeas corpus relief under 28 U.S.C. § 2241 in a prisoner's district of confinement. *Id.*; *Fontanez v. O'Brien*, 807 F.3d 84,

87 (4th Cir. 2015) (recognizing "attacks on the execution of a sentence are properly raised in a §
2241 petition") (internal quotation and citation omitted).

### 1.   The First Step Act

The First Step Act of 2018 (the "FSA"), P.L. 115-391, § 102(b)(1), 132 Stat 5194, 5210
(Dec. 21, 2018), amended 18 U.S.C. § 3621 which governs the calculation of federal prison
sentences.  Section 102(b) of the FSA also amended 18 U.S.C. § 3624(b), allowing federal inmates
to earn additional good time credits.  *See* P.L. 115-391, § 102(b)(1).  The FSA, among other things,
allows the BOP to award inmates a maximum of 54 days of good time credits per year of their
imposed sentence rather than 54 days of credit per year of their sentence served.  *See Pizarro v.
White*, 2019 WL 1922437, at *1 (M.D. Pa. Apr. 30, 2019).

The FSA was enacted on December 21, 2018.  *See* 18 U.S.C. § 3632.  Within 210 days of
enactment, the Attorney General was charged with developing and releasing a Risk and Needs
Assessment System ("the System").  *Id.*  The System is for:  (1) determining an inmate's risk of
recidivism; (2) assessing an inmate's risk of violence or serious misconduct; (3) determining the
type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for
each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to
appropriate EBRRs and productive activities ("PAs") as needed; (6) determining when to provide
incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when
the inmate is ready to transfer to pre-release custody or supervised release. *See id*. § 3632(a).
Further, the System provides guidance on the "type, amount, and intensity of EBRR programs and
PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." *Kurti v.
White*, No. 1:19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. §
3632(b)).

The FSA allows eligible[7] inmates who successfully complete EBRRs or PAs to receive earned time credits (ETCs) to be applied toward time in pre-release custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A). An inmate may earn ten (10) days of credit for every thirty (30) days of successful participation in EBRRs or PAs. *See id*. Additionally, eligible inmates who have been assessed at a minimum or low risk of recidivism, who maintain their low risk of recidivism over two (2) consecutive assessments, may earn an additional five (5) days of time credit for every thirty (30) days of successful participation. *See id*.

On July 19, 2019, the System was released for use throughout the BOP in compliance with the timeline set in the FSA. *See Holt v. Warden,* 539 F. Supp. 3d 1005, 1010 (D.S.D. 2021). Thereafter, within 180 days, the BOP was to implement and complete an initial intake risk and needs assessment for each prisoner. 18 U.S.C. § 3621(h)(1)(A). On January 15, 2020, the BOP announced that all inmates had been screened using the System, known as the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). *Holt*, 539 F. Supp. 3d at 1010. The implementation phase of the FSA, a two-year phase-in period for providing EBRRs and PAs, commenced after all inmates had been screened. 18 U.S.C. §§ 3621(h)(2)–(3). During the phase-in period, the BOP had until January 15, 2022 to provide EBRRs and PAs to all inmates. *Id*. § 3621(h)(2).

Thereafter, on January 19, 2022, the BOP published and codified its "procedures regarding the earning and application of Time Credits as authorized by the First Step Act of 2018" (the "January Final Rule"). *See* FSA Time Credits, p.1, 87 Fed. Reg. 12, 2705 (January 19, 2022) (codified at 28 C.F.R. pt. 523); *see also* ECF No. 3-6. Notably, under the January Final Rule, eligible inmates received retroactive time credits for programming and activities they participated

---

[7] To be eligible to earn ETCs, inmates must not have a conviction for a disqualifying offense. *See* 18 U.S.C. § 3632(d)(4)(D). Additionally, certain deportable non-U.S. citizens are not eligible for ETCs. 18 U.S.C. § 3632(d)(4)(E).

in beginning December 21, 2018, the date of the FSA's enactment.  ECF No. 3-6 at 4, 15.  In determining how to award ETCs during the period before individualized risk and needs assessments had been completed for every inmate (from the FSA's enactment on December 21, 2018 until January 14, 2020), the BOP, in its discretion, determined that eligible inmates will be afforded a "presumption of participation" for that period and will be awarded ETCs accordingly. *Id.* at 5, 15.  Importantly, for Mr. White's case, the BOP indicated that "[i]nmates will not receive credit for any period in which they were in a special housing unit, in a designation status outside the institution, temporarily transferred to the custody of another Federal or non-Federal government agency, in mental health/psychiatric holds … , or for refusing mandatory programming."  *Id.* at 5, 15.  It is this provision, codified at 28 CFR pt. 523.41(c)(4), that Mr. White challenges.

On October 5, 2022, Mr. White's ETCs were calculated by the BOP pursuant to these procedures.  Decl. of Brittny May, ECF No. 3-4 at 4.  Under the January Final Rule, once Mr. White was "transferred on July 21, 2022, he stopped earning any FSA credit."  *Id.* at 5.  Thereafter, he remained in "disallow status, i.e. the time he spent in transfer status or the SHU," and between July 21, 2022, and August 23, 2022 "he lost thirty-three days of possible calendar days accrued." *Id.* at 5-6.

Importantly, on November 18, 2022, the BOP published BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits:  Procedures for Implementation of 18 U.S.C. § 3632(d). *See* BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d).  This Program Statement implements the January Final Rule, and further clarifies the BOPs procedures for awarding and applying ETCs under the FSA. *Id.*  Relevant here, this policy update clarified what "successful participation" in EBRRs and PAs means, and now provides that "[i]nmates in Disciplinary Segregation status will not be considered

14

to be 'successfully participating.'  Inmates in restrictive housing for Administrative Detention shall obtain [E]TCs if they otherwise remain in earning status under the policy."  *See* BOP Program Statement 5410.01 at 4.  SHUs are "housing units in B[OP] institutions where inmates are securely separated from the general inmate population . . . to help ensure the safety, security, and orderly operation of correctional facilities, and protect the public."  *See* BOP Program Statement 5270.11, Special Housing Units.  An inmate placed in SHU can either be designated "administrative detention status" or "disciplinary segregation status."  *Id.*; 28 CFR 541.22.  Administrative detention status is a "status which removes you from the general population when necessary to ensure the safety, security, and orderly operations of correctional facilities, or to protect the public. It is non-punitive."  *Id.* at 3.  Disciplinary segregation status is a "punitive status imposed only by the Discipline Hearing Office as a sanction for committing a prohibited act(s)."  BOP Program Statement 5410.01 at 4.  Under the updated program statement, only those inmates in SHU on disciplinary segregation status are ineligible to earn ETCs.

Because Mr. White was in administrative detention status, not disciplinary segregation status, following his transfer from Oklahoma City to FCI-Cumberland, this BOP policy update directly impacted Mr. White.  His sentence was recalculated, and he was given credit for his time in SHU when he was first transferred to FCI-Cumberland.  ECF No. 9 at 4; ECF No. 10 at 1.  He has not been credited for the days he was in transfer status from Terra Haute to Oakalahoma City. *Id.*

## 2. Mootness

A case becomes moot when issues presented are no longer live controversies or if parties lack a legally cognizable interest in the outcome.  *Murphy v. Hunt*, 455 U.S. 478, 481 (1984). Therefore, a case becomes moot when there is no viable legal issue left to resolve.  *See Powell v. McCormick*, 395 U.S. 486, 496 (1969).  If developments occur during the course of a case which

render the court unable to grant a party the relief requested, the case must be dismissed as moot. *Blanciak v. Allegheny Ludlum Co*., 77 F.3d 690, 698–699 (3d Cir. 1996). Mootness, a doctrine of standing, may occur at any stage of a federal judicial proceeding when there is no longer a case or controversy as required by Article III, § 2, of the Constitution. Standing requires that the petitioner maintain a personal interest at the commencement of litigation and throughout the entirety of the action, *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); the parties must have a personal stake in the outcome of a lawsuit at all stages of the proceeding, *United States v. Verdin*, 243 F.3d 1174, 1177 (9th Cir. 2001). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable decision." *Spencer*, 523 U.S. at 7. If a case becomes moot, the lack of a case or controversy requires this court to dismiss the case for lack of jurisdiction. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).

Mr. White's Petition seeks restoration of credits he believed he was entitled to from July 21, 2022 until July 25, 2022 while in transfer status in Oklahoma City, and then from July 26, 2022 until August 22, 2022 while housed in SHU at FCI-Cumberland. ECF No. 1 at 3. The record reflects that, based on the BOP's recalculation of credits pursuant to updated policies, Mr. White has now been awarded all applicable credits for the period from July 26, 2022 until August 22, 2022. See ECF No. 9, 9-1, 10. Thus, this portion of Mr. White's claim is dismissed as moot. The court must then consider only whether Mr. White is entitled to credit for his time spent in transfer status in Oklahoma City from July 21, 2022 until July 25, 2022. Additionally, the court considers Mr. White's argument that that "a prisoner cannot be deprived of ETCs without due process." ECF No. 9 at 4.

### 3.   Entitlement to ETCs while in transfer status

The record supports that Mr. White's sentence has been properly calculated, and he is not entitled to the credit he seeks.

The BOP is entitled to deference in the application of FSA ETCs.  *Chevron, U.S.A., Inc. v. NRDC, Inc*., 467 U.S. 837, 865 (1984).  Courts defer to an agency's interpretation of a statute when Congress has "charged [the agency] with responsibility for administering the provision[.]" *See Chevron*, 467 U.S. at 865; *see also Smiley v. Citibank, N.A*., 517 U.S. 735, 739 (1996) ("It is our practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes that they are charged with administering.").  There exists a "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley*, 517 U.S. at 740-41.

An agency's interpretation of a statute it administers is always given some judicial deference, but the deference level varies.  When Congress gives authority to an agency to make rules with the force of law, and the agency acted pursuant to that delegated authority in interpreting the statute, then courts review the agency's interpretation under the standards articulated in *Chevron*.  *See United States v. Mead Corp*., 533 U.S. 218, 226-27 (2001).  The *Chevron* standard provides that where the statute being interpreted by the agency is silent or contains ambiguity, courts give deference to the agency's interpretation if it "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 845; *see also Lopez v. Davis*, 531 U.S. 230, 242 (2001) (holding the BOP had the authority to fill the "statutory gap" in § 3621(e)'s early release provision in a reasonable manner in light of the Congress' "revealed design").  Therefore, if 18 U.S.C. § 3632(d)(4), at issue here, is clear, the BOP must apply it as written.  However, if ambiguity exists,

"the question for the court is whether" the BOP's interpretation of 18 U.S.C. § 3632(d)(4) is reasonable and reflects a "permissible construction of the statute."  *Chevron*, 467 U.S. at 843.

Here, 18 U.S.C. § 3632(d)(4)(A) explains that "[a] prisoner, except for an ineligible prisoner under subparagraph (d), who successfully completes [EBRRs or PAs], shall earn [ETCs]." However, ambiguity exists, because what constitutes 'successful completion' was not defined by Congress.  Thus, the BOP, after allowing for notice and comment, published 28 C.F.R. § 523.41(c). There, the BOP outlined that "[a]n eligible inmate . . . generally will not be considered to be 'successfully participating' in EBRR Programs or PAs in situations including . . . (ii) Designation status outside the institution . . ."  such as Mr. White's few days in transfer status in Oklahoma City.  This is a permissible construction of the statute, and thus the BOP is entitled to *Chevron* deference.

Further, the promulgation of the BOP's policy statement[8] maintaining that inmates in a "[d]esignation status outside the institution," such as transfer status, are not "successfully participating" in EBRRs or PAs, and accordingly they are not able to accrue ETCs, is an "internal agency guideline that has not been subjected to the rigors of notice and comment rulemaking." *Cunningham v. Scibana*, 259 F. 3d 303, 306 (4th Cir. 2001); *see also* BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d).  While policy statements are not given the force of law, they are entitled to respect.  *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000).  An agency's interpretation of a statute, such as the BOP's program statement at issue here, is afforded respect when it has the "power to persuade" as defined by the Supreme Court in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and

---

[8]   *See* BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d).

> litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Id*.   The BOP's program statement that led to the determination that Mr. White *was* entitled to credit for his time spent in SHU at FCI-Cumberland, but *was not* entitled to credit for his time spent in transfer status in Oklahoma City makes sense and thus is entitled to respect.  Mr. White is not entitled to the credit that he seeks.

Next, the court considers Mr. White's argument that, prior to placement in transfer status, he was entitled to Due Process because of the corresponding lack of ability to earn ETCs while in such a status.  In general, when analyzing a claim of denial of Due Process, "[w]e first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).  The United States District Court for the Distrtict of Minnesota considered an analogous issue to that raised by Mr. White in *Fiorito Fikes*, No. 22-CV-0749 (PJS/TNL), 2022 WL 16699472 (D. Minn. Nov. 3, 2022).  There, the court addressed whether the petitioner "was entitled to additional procedural protections before being placed in the SHU" given the corresponding inability to earn ETCs.  *Fiorito*, 2022 WL 16699472 at *4.  The court explained that "Federal prisoners have long been entitled to time credits resulting from good behavior, *see* 18 U.S.C. § 3624(b), and challenges to the loss of good-time credits following prison disciplinary proceedings are a regular and unexceptional feature of modern habeas litigation." *Fiorito*, 2022 WL 16699472, at *5 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973); *Portley-El v. Brill*, 288 F.3d 1063, 1066-67 (8th Cir. 2002)).  Therefore, "it is not absurd to argue that [E]TCs, like

good-time credits, might also implicate protected liberty interests that could be vindicated through a habeas petition." *Fiorito*, 2022 WL 16699472, at *5.

However, two critical differences exist between good-time credits and ETCs earned pursuant to the First Step Act:

> First, good-time credits entitle a prisoner to a reduction in his sentence, period. ETCs[9] are not quite so straightforward. In contrast to prisoners who earn good-time credits, prisoners who earn ETCs may not be able to *apply* those ETCs. *See* 18 U.S.C. § 3624(g)(1)(D). Instead, application of ETCs is contingent on maintaining a minimal or low risk of recidivism as assessed by the BOP or, alternatively, on receiving an exception to that requirement from the warden of the facility where the prisoner is detained. *Id.* Further, even when a prisoner may apply ETCs, § 3632(d)(4)(C) directs that those ETCs may be applied by the BOP 'toward time in prerelease custody *or* supervised release.' Prerelease custody, however, is just another form of BOP custody, *see* 18 U.S.C. § 3624(g)(2), and '[a] legal action seeking transfer from one form of BOP custody to another (like a legal action seeking transfer from one BOP facility to another) is not a challenge to the fact or duration of confinement.' . . . This contingency makes it doubtful that ETCs are a protected liberty interest.

*     *     *

> Second, unlike good-time credit accumulated under § 3624(b), ETCs are not a general entitlement. Instead, prisoners are merely afforded the opportunity to earn ETCs by participating in recidivism-reduction programming. Although ETCs themselves are a recent creation, many courts examining similar time-credit schemes have held that the loss of a mere opportunity to accumulate credit towards a sentence is not sufficient to create a protected liberty interest. . . . The general rule that the loss of an opportunity to earn a reduction in sentence does not amount to infringement of a protected liberty interest makes particular sense in the context of ETCs, as the opportunity to participate in recidivism-reduction programming can be lost for several reasons, including reasons having nothing to do with the conduct or blameworthiness of the prisoner. For example, a prisoner who is temporarily transferred from the custody of the BOP to a non-BOP facility to testify at trial, *see* 28 U.S.C. § 2241(c)(5), would be unable to successfully participate in BOP

---

9   The United States District Court for the District of Minnesota utilizes the acronym "FTC," for First Step Act time credits, rather than ETCs, which has been used by the parties here. Accordingly, any reference to FTCs in this quoted language has been changed to ETCs for consistency, but the analysis is unaltered.

> recidivism-reduction programming during the time that the prisoner remained
> outside the custody of the BOP, *see* 28 C.F.R. § 523.41(c)(4)(iii). The same would
> be true of a prisoner who is transferred to a hospital for extended treatment of a
> serious medical need. *See id.* § 523.41(c)(4)(ii). The statute and accompanying
> regulations betray no expectation that ETC credits could reasonably be regarded as
> an entitlement, rather than as a benefit that a prisoner might or might not be able to
> earn at various times during his detention. This is too flimsy an expectation to give
> rise to a protected liberty interest. And because the opportunity to earn ETCs is not
> a protected liberty interest, [Petitioner] was not entitled to due process before he
> lost that opportunity by getting sent to the SHU.

*Fiorito*, 2022 WL 16699472, at *5, 6. This analysis is sound, and applicable to Mr. White's current

Due Process claims. For the reasons outlined above, Mr. White did not have a liberty interest in

the opportunity to earn ETCs, and thus was not entitled to any additional Due Process protections

prior to being placed in transfer status.

## IV.   Conclusion

Mr. White has received all the credit to which he is entitled, and his arguments regarding

Due Process fail. Accordingly, the court will deny Mr. White's request for habeas relief.

Respondent's motion to dismiss, or in the alternative for summary judgment (ECF No. 3), will be

granted. Mr. White's motion for leave to supplement response to motion to dismiss (ECF No. 9)

will be granted, and motion to strike (ECF No. 11) will be denied.

A separate Order follows.


July 31, 2023                                   _____/s/_____

                                                DEBORAH K. CHASANOW
                                                United States District Judge